Case No.  11-1954

# UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

**CAMILLE HADDAD**

Plaintiff-Appellant

v.

**ALEXANDER, ZELMANSKI, DANNER & FIORITTO, PLLC**

Defendant-Appellee

---

## APPEAL IN CIVIL ACTION FROM THE
## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN, CASE NO.   10-11996

## APPELLANT'S PRINCIPAL BRIEF

Daniel P. Feinberg (P38356)
30200 Telegraph Road, Suite 467
Bingham Farms, MI  48025
(248) 644-4433
dfeinberg@meisner-associates.com
Attorney for Plaintiff-Appellant

# TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Statement with Respect to Oral Argument.............................................v

Jurisdictional Statement.........................................................................1

Statement of Issues Presented for Review.............................................2

Statement of the Case.............................................................................3

Statement of Facts..................................................................................5

Summary of the Argument......................................................................9

Argument

      In granting summary judgment in favor of Defendant, the trial court
      erred in determining, as a matter of law, that the debt Defendant was
      attempting to collect was not a consumer debt................................10

      Even assuming the Court's interpretation was correct, there was still a
      genuine issue of material fact as to whether Defendant was attempting
      to collect a consumer debt...............................................................17

      The trial judge erred in denying Plaintiff's Motion for Summary
      Judgment as Defendant was attempting to collect a consumer debt
      as a matter of law...........................................................................18

      The trial judge erred in denying the Motion to Alter Judgment...............23

Conclusion...........................................................................................26

Certificate of Compliance....................................................................27

Addendum.............................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Anderson v Liberty Lobby, Inc,* 477 US 242, 249; 106 S.Ct 2505;
91 L.Ed.2d 202 (1986)………………………………………………….17

*Baird v ASA Collections*, 910 NE2d 780 (Ind App,2009)……………………....15

*Brown v Mayor of Detroit,* 271 Mich App 692; 723 NW2d 464 (2006)………23

*Caron v Charles E. Maxwell, PC,* 48 F Supp 2d 932 (D Ariz,1999)………….12

*Chesher v Neyer*, 477 F.3d 784 (6th Cir, 2007)………………………………..18

*Colunga v Young,* 722 F.Supp 1479 (WD Mich, 1989),
*aff'd,* 914 F2d 255 (6th Cir, 1990)……………………………………………….24

*Dikun v Streich,* 369 F Supp 2d 781 (ED Va, 2005)………………………..10

*Fuller v Becker & Poliakoff, PA*, 192 F Supp 2d 1361(MD Fla, 2002)……….10

*Gage Products Co v Henkel Corp*, 393 F.3d 629 (6th Cir, 2004)……………..24

*Garner v Kansas,* No. 98-CV-1274, 1999 WL 262100 (ED La,1999)……….12

*Good v Ohio Edison Co*, 149 F3d 413 (6th Cir, 1998)…………………………24

*Heintz v Jenkins*, 514 US 291; 115 S.Ct 1489; 131 L.Ed.2d 395 (1995)………19

*Henderson v Wells Fargo Bank*, No. 3:09cv01, 2009 WL 1259355
(WD NC, 2009)…………………………………………………………………..10

*HDV-Greektown, LLC v City of Detroit*, 568 F3d 609 (6th Cir, 2009)………..10

*Kaplan v Assetcare, Inc,* 88 F Supp 2d 1355 (SD Fla, 2000)…………………10

*Kistner v Law Offices of Michael P Margelefsky, LLC,* 518 F3d 433
(6th Cir, 2008)……………………………………………………………………19

*Ladick v Van Gemert*, 146 F3d 1205, 1206-1207 (10th Cir, 1998);
*cert denied*, 119 S.Ct 511; 142 L.Ed.2d 424 (1998)……………………………...11,13

*Martin v Cincinnati Gas & Elec Co*, 561 F3d 439 (6th Cir, 2009) …………...10,17

*Matsushita Elec Indus Co v Zenith Radio Corp*, 475 US 574;
106 S.Ct 1348; 89 L.Ed.2d 538 (1986)……………………………………………17

*McKeown v Mary Jane M. Elliott PC*, No. 07-12016-BC;
2007 WL 4326825 (ED Mich, 2007)………………………………………………22

*Newman v Boehm, Pearlstein and Bright, Ltd*, 119 F3d 477 (7th Cir,1997)….12,13

*Owens v Hellmuth & Johnson, PLLC*, 550 F Supp 2d 1060 (D Minn, 2008)….12

*Piper v Portnoff Law Associates, Ltd*, 396 F3d 227 (3d Cir, 2005)……………11

*Rookledge v Garwood*, 340 Mich 444; 65 NW2d 785 (1954)…………………23

*Sault Ste Marie Tribe of Chippewa Indians v Engler*, 146 F3d 367
(6th Cir, 1998)……………………………………………………………………24

*Sibley v Firstcollect, Inc*, 913 F Supp 469 (MD La,1995)………………………10

*Serio v Badger Mut Ins Co*, 266 F2d 418 (5th Cir, 1959)………………………25

*Thies v Law Offices of William A Wyman*, 969 F Supp 604 (SD Cal,1997)..12,13,15

*Williams v Edelman*, 408 F Supp 2d 1261 (SD Fla, 2005)………………………13

*Wright v Bush Ross, P.A.*, No. 8:07-cv-1885-T-23MAP,
2008 WL 190466 (MD Fla, 2008)…………………………………………………12

## Statutes

15 USC § 1692……………………………………………………………………..1

15 USC § 1692(a)(3)……………………………………………………………...11

15 USC § 1692(a) (5)……………………………………………………………...11

15 USC §1692a(5)……………………………………………………...15

15 USC §1692e(2)(A)………………………………………………….20

15 USC §1692g(b)…………………………………………………...20

15 USC §1692k(d)……………………………………………………..1

28 USC § 1291 ………………………………………………………..1

28 USC § 1331 ……………………………………………………….1

28 USC § 1337……………………………………………………….1

28 USC § 1367……………………………………………………….1

MCL § 339.901(b)(xi)…………………………………………………22

MCL § 445.251……………………………………………………….1

MCL § 445.251(g)(xi)………………………………………………21,22

MCL § 445.252(f)…………………………………………………….23

MCL § 559.169………………………………………………………...14

MCL § 559.206………………………………………………………..14

MCL § 559.208………………………………………………………..14,21

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Oral argument should be permitted as it could enhance the decision making process in this matter, and Plaintiff-Appellant was twice denied the opportunity for oral argument in the lower court.  The dispositive issues in this case have not been authoritatively decided, or even specifically addressed by any appellate court.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Camille Haddad, filed a two-count Complaint in the United States District Court of the Eastern District of Michigan against Defendant-Appellee, Alexander, Zelmanski, Danner & Fioritto, PLLC (AZDF), alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 USC § 1692, *et seq.*, and the Michigan Regulation of Collection Practices Act (RCPA), MCL § 445.251, *et seq.* (Record Entry No. 1, Complaint and Demand for Trial By Jury). The District Court has original jurisdiction over matters and actions arising under the FDCPA pursuant to 15 USC § 1692k(d) and 28 USC §§ 1331 and 1337, as well as supplemental or pendant jurisdiction over the related state law claim that formed part of the same case or controversy pursuant to 28 USC § 1367.

The District Court entered Judgment on May 20, 2011 (Record Entry No. 19, Judgment).   Mr. Haddad filed a Motion to Alter Judgment on June 17, 2011(Record Entry No. 20, Plaintiff's Motion to Alter Judgment), and the Order denying same was entered on July 7, 2011 (Record Entry No. 22, Order).   Mr. Haddad filed his Notice of Appeal from this Order which disposed of all the parties' claims on August 2, 2011(Record Entry No. 23, Notice of Appeal). Accordingly, this Court has jurisdiction pursuant to 28 USC § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the trial court erred in granting summary judgment in favor of Defendant by concluding that the debt Defendant was attempting to collect was not a consumer debt because Plaintiff was no longer residing in the condominium unit that had been his home of fifteen years at the time defendant initiated its collection activity.

2.    Whether the trial court erred in granting summary judgment in favor of Defendant by concluding that there was no genuine issue of material fact as to whether Defendant was attempting to collect a consumer debt.

3.    Whether the trial judge erred in denying Plaintiff's Motion for Summary Judgment by failing to conclude that there was no genuine issue of material fact that Defendant was attempting to collect a consumer debt.

4.    Whether the trial judge erred in failing to grant Plaintiff's Motion to Alter Judgment.

## STATEMENT OF THE CASE

On May 18, 2010, Camille Haddad, filed his two-count Complaint against AZDF, alleging violations of the FDCPA and the RCPA (Record Entry No. 1, Complaint).   After completion of discovery, the parties each filed a Motion for Summary Judgment, AZDF on March 31, 2011 (Record Entry No. 10, Defendant's Motion for Summary Judgment), and Mr. Haddad on April 1, 2010 (Record Entry No. 11, Plaintiff's Motion for Summary Judgment).   Each party filed also filed Response (Record Entry No. 13, Defendant's Response to Motion for Summary Judgment, and Record Entry No. 14, Plaintiff's Response Motion for Summary Judgment) and Reply Briefs (Record Entry No. 15, Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, and Record Entry No. 17, Plaintiff's Reply to Defendant's Response Motion for Summary Judgment).

After having scheduled oral argument on the Motions to be heard on May 25, 2011 (Record Entry No. 16, Notice of Hearing), the District Court Judge decided the Motions without hearing on May 20, 2011, granting Defendant's Motion and denying Plaintiff's Motion (Record Entry No. 18, Order).   Judgment was entered accordingly the same day (Record Entry No. 19, Judgment).

Thereafter, Mr. Haddad located a seven year old document which he had been unaware still existed.   He then filed a Motion to Alter Judgment based on newly discovered evidence on June 17, 2011 (Record Entry No. 20, Plaintiff's

Motion to Alter Judgment). Once again, after setting the matter for oral argument (Record Entry No. 21, Notice of Hearing), the District Court Judge decided that matter without hearing on July 7, 2011, denying the Motion (Record Entry No. 22, Order). Mr. Haddad then filed his Notice of Appeal to this Court on August 2, 2011 (Record Entry No. 23, Notice of Appeal).

## STATEMENT OF FACTS

Mr. Haddad has owned a unit in Cumberland Condominium since May 15, 1991. The unit was his principal residence for fifteen (15) years (Record Entry No. 10, Exhibit 3 to Defendant's Motion for Summary Judgment). After moving out in 2006, Mr. Haddad deducted expenses related to the unit on his income taxes (Record Entry No. 10, Exhibit 6 to Defendant's Motion for Summary Judgment), although he did not actually rent out the unit until October, 2007 (Record Entry No. 10, Exhibit 4 to Defendant's Motion for Summary Judgment).

AZDF, formerly known as Alexander, Zelmanski & Lee, PLLC, is real estate law firm with a particular emphasis on legal issues pertaining to condominiums and condominium associations. Among the associations that it represents is Cumberland Condominium Association (the "Association") (Record Entry No. 11, Plaintiff's Motion for Summary Judgment, Brief in Support, pp. 2-3). By letter dated October 29, 2008, AZDF informed Mr. Haddad that the Association was claiming that he owed $898.00, purportedly consisting of "$803.00 in unpaid assessments, $40.00 in late charges, and $55.00 in legal fees and costs". AZDF further represented that the letter was Mr. Haddad's "legal notice that unless we receive full payment of all amounts owed within thirty (30) calendar days … we may proceed to file a lien". The letter also stated, "If you notify us in writing within the thirty (30) day period that the debt or any portion

thereof is disputed, we will obtain verification of the debt … and this verification will be mailed to you." Finally, the letter acknowledges, "This office is attempting to collect a debt". (Record Entry No. 11, Exhibit A to Plaintiff's Motion for Summary Judgment).

Within the thirty (30) day period, on November 13, 2008, Mr. Haddad unequivocally denied that alleged charges and requested verification (Record Entry No. 11, Exhibit B to Plaintiff's Motion for Summary Judgment). AZDF responded by letter dated December 3, 2008, with which it enclosed an "Accounts Receivable" ledger, and asserted that "the balance stems from several late charges assessed to your account throughout the course of this year." While the ledger did display a number of purported late charges, it began with the date of January 11, 2008 and an initial unverified, unidentified purported account balance of $75.00; but otherwise displayed nothing but timely paid assessments. The letter now demanded payment of $938.00 (Record Entry No. 11, Exhibit C to Plaintiff's Motion for Summary Judgment).

Mr. Haddad responded by letter dated December 9, 2008, pointing out that the beginning balance was unexplained and unverified, and, again requesting verification of the debt. AZDF replied with a letter dated January 20, 2009, which included another account ledger. This ledger began as of August 1, 2006, and showed an unexplained, unverified initial account balance of $50.00. The January

6

20, 2009 letter now demanded payment of $1,063.00, which purportedly consisting of "$363.00 in unpaid condominium assessments ... , $200.00 in fines ... , $400.00 in late charges ... , and $100.00 in legal fees" (Record Entry No. 11, Exhibit D to Plaintiff's Motion for Summary Judgment).

Mr. Haddad again wrote to point out that the $50.00 beginning balance was still unsubstantiated (Record Entry No. 11, Exhibit E to Plaintiff's Motion for Summary Judgment). Instead of attempting to verify the unexplained beginning balance, which, if inaccurate, would mean Mr. Haddad was not indebted to the Association in any amount, AZDF's sent a letter dated May 18, 2009 containing a copy of a "Notice of Lien for Non-Payment of Assessments", the original of which was being sent to the Oakland County Register of Deeds for recording. The lien claimed "the sum of One Thousand Four Hundred Sixteen and 00/100 ($1,416.00) Dollars" due and owing, "exclusive of any costs, late charges, interest, fines, attorney fees and future assessments". The letter, itself, demanded payment of $1,704.00, purportedly consisting "of $1,416.00 in unpaid monthly assessments, $80.00 in late charges, and $208.00 in legal fees and costs." (Record Entry No. 11, Exhibit F to Plaintiff's Motion for Summary Judgment).

The purported Notice of Lien for Non-Payment of Assessments encumbering Mr. Haddad's unit was, in fact, recorded on May 19, 2009 in the office of the Oakland County Register of Deeds at Liber 41171, Page 798, Oakland

County Records (Record Entry No. 11, Exhibit G to Plaintiff's Motion for Summary Judgment).

Thereafter, Mr. Haddad continued to timely make his regular monthly assessment payments, but nothing more. No verification of the disputed, unaccounted for, beginning balance was ever supplied. Despite the fact that Mr. Haddad made no payments toward the purported $1,704.00 debt, the Association eventually corrected its records, and the Lien was discharged on February 22, 2010 (Record Entry No. 11, Exhibit H to Plaintiff's Motion for Summary Judgment). Subsequently to the Court granting Summary Judgment in favor of AZDF, while disposing of some old records, Mr. Haddad located the invoice from the Association for the disputed $50.00 charge in an envelope post-marked November 16, 2004, a time at which Mr. Haddad was living in the unit (Record Entry No. 20, Exhibits A and B to Plaintiff's Motion to Alter Judgment).

## SUMMARY OF THE ARGUMENT

The trial court erred in determining, as a matter of law, that the debt AZDF was attempting to collect was not a consumer debt by focusing on the time at which AZDF commenced its collection activity as opposed to when the debt was incurred. Moreover, a condominium assessment is a consumer debt as a matter of law.

Even if the trial court's interpretation of consumer debt is correct, the trial erred in concluding there was no issue of material fact because based on the evidence before it at the time it decided the motion, it was clear that a rational trier of fact could have concluded that the alleged debt was incurred while Mr. Haddad was still living in the unit.

The trial judge erred in denying Plaintiff's Motion for Summary Judgment as a condominium assessment is a consumer debt as a matter of law, it was undisputed that AZDF was a debt collector under the FDCPA and a regulated person under the RCPA, and there was no genuine question of fact that AZDF violated the provisions of both Acts.

The trial judge erred in denying Plaintiff's Motion to Alter Judgment because the newly discovered evidence, the seven year old invoice, that Mr. Haddad found absolutely mandated a finding that was a question of fact from which a rational trier of fact could have found in favor of Mr. Haddad.

## ARGUMENT

**In granting summary judgment in favor of Defendant, the trial court erred in determining, as a matter of law, that the debt Defendant was attempting to collect was not a consumer debt.**

This Court reviews a grant of summary judgment de novo, *Martin v Cincinnati Gas & Elec Co,* 561 F3d 439, 443 (6th Cir, 2009), and also reviews the district court's legal conclusions de novo. *HDV-Greektown, LLC v City of Detroit,* 568 F3d 609, 620 (6th Cir, 2009).

> "The elements of a FDCPA claim are as follows:
>
> (1) plaintiff has been the object of collection activity arising from consumer debt;
>
> (2) the defendant qualifies as a debt collector under the FDCPA; and
>
> (3) the defendant has engaged in an act or omission prohibited by the FDCPA.
>
> *Dikun v Streich,* 369 F Supp 2d 781, 784-85 (ED Va, 2005)."

*Henderson v Wells Fargo Bank*, No. 3:09cv01, 2009 WL 1259355, 8 (WD NC, 2009); See also, *Kaplan v Assetcare, Inc,* 88 F Supp 2d 1355, 1360-1361 (SD Fla, 2000); *Sibley v Firstcollect, Inc,* 913 F Supp 469, 470 (MD La,1995); *Fuller v Becker & Poliakoff, PA*, 192 F Supp 2d 1361, 1366 (MD Fla, 2002).

Defendant did not deny that is qualifies as a debt collector under the FDCPA, nor was there any dispute that Defendant's conduct would have been prohibited if it was attempting the collect a consumer debt. The only issue then was

whether the collection activity arose from the collection of a "consumer debt". The trial court found, as a matter of law that the debt Defendant was attempting to collect was not a "consumer debt", focusing on the time at which Defendant commenced its collection activity as opposed to when the debt was incurred. This was error.

The term "consumer debt" is not specifically defined in the FDCPA, but both "consumer" and "debt" are defined:

> "(3) The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt. ...

> "(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 USC § 1692(a)(3) & (5).

Mr. Haddad is a natural person, who was allegedly obligated to pay a past due condominium assessments of $50.00 incurred sometime prior to August 1, 2006.  AZDF did not dispute that a condominium assessment involves a transaction primarily for personal, family, or household purposes, with good reason.

> "Several circuit courts that have considered the question have similarly held that condominium assessments, and similar obligations, are 'debt' under the FDCPA. *See Piper v Portnoff Law Associates, Ltd,* 396 F3d 227 (3d Cir, 2005) (assessments for delinquent water and sewer assessments are 'debt'); *Ladick v Van Gemert,* 146 F3d

1205 (10th Cir), *cert denied,* 525 US 1002, 119 SCt 511, 142 L.Ed.2d 424 (1998) (condominium assessment constitutes a debt under the FDCPA); *Newman v Boehm, Pearlstein and Bright, Ltd,* 119 F3d 477, 482 (7th Cir,1997) (same). Furthermore, nearly all published opinions of district courts considering the question (sitting in districts where the circuit court has not yet considered the question) have reached the same conclusion. *See Garner v Kansas,* No. 98-CV-1274, 1999 WL 262100, at 2 (ED La,1999) (adopting the Seventh Circuit's logic in holding that condominium fees are 'debts' under the FDCPA); *Caron v Charles E. Maxwell, PC,* 48 F Supp 2d 932, 934 (D Ariz,1999) (holding that condominium fees are 'debts,' and noting that 'the United States Courts of Appeals which have considered the issue of whether homeowners' association fees constitute a debt under the FDCPA have concluded [they do]'); *Thies v Law Offices of William A. Wyman,* 969 F Supp 604, 608 (SD Cal,1997) (explicitly rejecting the *Azar* court's requirement of a *pro tanto* exchange in finding that condominium fees constitute 'debt').

"The overwhelming legal authority is persuasive. Moreover, '[t]he purpose of the FDCPA is to 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' *Brown,* 119 F3d at 924 (quoting 15 USC 1692(e)). To this end, the FDCPA broadly defines 'debt.' *See id.* There is no reason to artificially limit the deceptive practices prohibited by the FDCPA to transactions involving the extension of credit. Because Plaintiff alleges that the condominium is her 'personal residence' (*FAC* ¶ 8) and, for the reasons stated above, Plaintiff has alleged the existence of a 'debt' under the FDCPA." *Williams v Edelman,* 408 F Supp 2d 1261, 1266-1268 (SD Fla, 2005).

See also, *Owens v Hellmuth & Johnson, PLLC,* 550 F Supp 2d 1060 (D Minn, 2008); *Wright v Bush Ross, P.A.,* No. 8:07-cv-1885-T-23MAP, 2008 WL 190466 (MD Fla, 2008).

AZDF did take the position, and the trial judge concurred, that because Mr. Haddad now rents out his unit the purported debt was not a consumer debt. The problem with that position is that it focuses on the time at which the collection activity began, as opposed to the time at which the debt was incurred. Since the first element of a FDCPA claim is whether the collection activity arose out of a consumer debt, the time at which the collection activity began is immaterial as long as that activity arose out a consumer debt.

Nevertheless, it is immaterial whether Mr. Haddad was living in the unit at the time the debt was incurred because the obligation of Mr. Haddad, as a consumer, to pay the money arose out of the transaction in which he purchased his home.

As noted above, the Court in *Williams v Edelman, supra,* the Court found condominium assessments to be "personal" not only because the condominium was her personal residence but also, "for the reasons stated above". Among those reasons was the rationale of *Ladick v Van Gemert*, 146 F3d 1205, 1206 (10th Cir, 1998) *cert denied*, 119 S.Ct 511; 142 L.Ed.2d 424 (1998), which, in turn, followed "the reasoning of the Seventh Circuit in *Newman v Boehm, Pearlstein & Bright, Ltd,* 119 F3d 477 (7th Cir, 1997), which, building upon its reasoning in *Bass,* held that the obligation to pay a condominium assessment arises in connection with the purchase of the condominium itself. *Newman,* 119 F.3d at 481; *see also Thies v*

*Law Offices of William A. Wyman,* 969 F.Supp 604, 607 (SD Cal, 1997) (applying *Newman* and holding that the obligation to pay homeowners association fees based on a covenant running with the property constituted a 'transaction' within the meaning of the FDCPA). Under this reasoning, Mr. Ladick became obligated upon purchasing his condominium unit to pay any assessments pursuant to the governing documents of his association, … as well as under the California statute addressed to condominium property. …. The assessment at issue in this case therefore qualifies as an 'obligation of a consumer to pay money arising out of a transaction.' 15 U.S.C. § 1692 *a* (5)."

Similarly, Mr. Haddad became obligated upon purchasing his condominium unit as his personal residence to pay any assessments pursuant to the Master Deed for the Condominium, an obligation that runs with the land, as well as under the Michigan Condominium Act. *See* MCL §§ 559.169, 559.206, 559.208. The situation would be no different than if Mr. Haddad had simply sold his unit without paying a past due association fee. The fact that he is no longer living in the unit does not change the fact that the debt was personal.

Specifically, the governing condominium documents of the Cumberland Association, Article II, Section 3, provide: "Each Co-owner … shall be and remain *personally* liable for the payment of all assessments … pertinent to the Co-owner's unit which may be levied while such Co-owner is the owner thereof." Not only

does Mr. Haddad remain personally liable on the debt, whether or not he is renting out his unit, but he must pay his assessments to be entitled to the personal use and enjoyment of the common elements, including whatever amenities the condominium may provide. See Article II, Section 4: "No Co-owner may exempt himself … from liability for contribution toward the expenses of administration by the waiver of the use or enjoyment of any of the Common Elements or by the abandonment of the Co-owner's unit". (Record Entry No. 20, Exhibit C to Plaintiff's Motion to Alter Judgment, emphasis added). See also, Article II, Section 5: "A Co-owner in default shall not be entitled to utilize any of the General Common Elements of the Condominium" (Record Entry No. 20, Exhibit D to Plaintiff's Motion to Alter Judgment). This obligation, to contribute in order to continue to use the amenities is akin, as pointed out in *Thies v Law Offices of William A Wyman*, 969 F.Supp 604 (SD Cal, 1997), to the obligation to pay membership dues to a health club in order to use the facilities, for which, in the case of non-payment, "there would be no question that this would create a 'debt' under the FDCPA."

> "The debt to the health club would be no different merely because other members also used the services of the club, nor would the debt change if the consumer never used the services of the health club but was still under contract to pay dues. A homeowners association is akin to a health club or other exclusive group. A homeowner, by purchasing the property, is under a contractual agreement to be a 'member of the club.' With the payment of dues come the services

provided by the Association—use of the common areas improved and maintained with the dues. If the association maintains a swimming pool or tennis courts, they are services available for the exclusive use of the members. The purpose of these services do not become 'secondary' or 'indirect' merely because other members may also use them." *Thies* at 608.

Nor does the obligation become any less personal because the unit is being rented. Article VI, Section 1 of the Cumberland Condominium Amended and Restated Condominium Bylaws expressly forbids using a unit for business or commercial purposes.

Section 1. <u>Residential Use.</u> No Unit in the Condominium shall be used for other than residential purposes and the Common Elements shall only be used for purposes consistent with those set forth in this section 1. (Record Entry No. 20, Exhibit E to Plaintiff's Motion to Alter Judgment).

Mr. Haddad's situation is not at all analogous to that in *Baird v ASA Collections*, 910 NE2d 780, 786 (Ind App,2009), wherein the Court noted:

"No evidence was presented that Baird expressed her intent to use the lots for 'personal, family, or household purposes' pursuant to the FDCPA provisions. To the contrary, Baird testified that the lots in question were unbuildable and were sold to purchasers who desired a lot for access to the recreational facilities at HVL. Moreover, the evidence established that Baird and Goodrich bought the lots for investment purposes..."

Here, Mr. Haddad not only intended to use his unit for personal, family, or household purposes, he did, in fact, do so for 15 years. The decision finding the purported debt not to be a consumer debt as a matter of law was erroneous.

16

Similarly, the RCPA defines debt as an "obligation for the payment of money … arising out of an express or implied agreement … for a purchase made primarily for personal, family or household purposes." Accordingly, for the same reasons that a condominium assessment is a debt under the federal act, it is a debt under the state act.

### Even assuming the Court's interpretation was correct, there was still a genuine issue of material fact as to whether Defendant was attempting to collect a consumer debt.

This Court reviews a grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Martin v Cincinnati Gas & Elec Co,* 561 F3d 439, 443 (6th Cir, 2009). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v Liberty Lobby, Inc,* 477 US 242, 249; 106 S.Ct 2505; 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec Indus Co v Zenith Radio Corp,* 475 US 574, 587; 106 S.Ct 1348; 89 L.Ed.2d 538 (1986).

Here, it was clear that the purported, unverified debt which AZDF was attempting to collect arose sometime before August 1, 2006. It was undisputed that Mr. Haddad had purchased his unit on May 15, 1991 for the purpose of using it as his personal residence, and did, in fact, reside there for fifteen years.

Although the exact date that Mr. Haddad stopped using the unit as his personal residence was not established, even prior to Mr. Haddad finding the seven year old invoice, it appears that there could not have been a window of any more than 45 days in which the debt could possibly have been incurred at a time after he was no longer living in the unit. Certainly, a rational trier of fact could have concluded that the alleged debt was incurred while Mr. Haddad was still living in the unit. It was error the trial court not to have determined there was a genuine issue of material fact. Moreover, once Mr. Haddad found the invoice for $50.00 in an envelope dated November 14, 2004, there was no question that the a trier of fact could have determined by a preponderance of the evidence that the alleged debt was incurred while Mr. Haddad was still living in the unit, even if, as the court stated, it was not an absolute certainty that the two records of a $50.00 charge were, in fact, the same charge.

> **The trial judge erred in denying Plaintiff's Motion for Summary Judgment as Defendant was attempting to collect a consumer debt as a matter of law.**

This Court reviews de novo a district court's denial of summary judgment. *Chesher v Neyer*, 477 F.3d 784, 796 (6th Cir, 2007).

For the reasons stated in the first argument above, the subject alleged debt was a consumer debt. Moreover, AZDF is certainly a debt collector, and it has not

disputed same.  The term "debt collector" is specifically defined under the FDCPA as follows:

> "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 USC 1692a(6).

The Supreme Court has stated that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v Jenkins*, 514 US 291, 298-299; 115 S.Ct 1489; 131 L.Ed.2d 395; 63 USLW 4266 (1995).  *See also, Kistner v Law Offices of Michael P Margelefsky, LLC,* 518 F3d 433, 438 (6th Cir, 2008) (attorney who is regularly engaged, directly and indirectly, in the collection of debts, is a debt collector under the FDCPA).

AZDF's website provide that their "typical clients" include "the condominium association board of directors seeking assistance with the collection of unpaid co-owner assessments..." (Record Entry No. 11, Exhibit I to Plaintiff's Motion for Summary Judgment).  There is no genuine issue of fact the AZDF regularly engages consumer-debt-collection activity.

As to the third element, AZDF has clearly engaged in conduct prohibited by the FDCPA.  AZDF's first communication with Mr. Haddad in the capacity as a

debt collector occurred on October 29, 2008.  Pursuant to 15 USC § 1692g(b), if the consumer notifies the debt collector in writing within thirty (30) days after receipt of an initial communication from a debt collector that the debt is disputed, "the debt collector **shall cease** collection of the debt … until the debt collector obtains verification of the debt … and a copy of such verification … is mailed to the consumer." (Emphasis supplied.)  Mr. Haddad did, in fact, deny the validity of the debt, within 30 days, yet AZDF continued to attempt collection without ever obtaining and providing verification of the debt.

In fact, even disregarding the unaccounted for $50.00 beginning balance, AZDF never verified the "$803.00 in unpaid assessments, $40.00 in late charges, and $55.00 in legal fees" as stated in its initial communication of October 29, 2008. To the contrary, on January 20, 2009, AZDF asserted only "$363.00 in unpaid condominium assessments" was owed, but this letter was followed by one in which it now claimed "$1,416.00 in unpaid monthly assessments", and, in fact, it recorded a lien in the amount $1,416.00, "exclusive of any costs, late charges, interest, fines, attorney fees …"

In addition, 15 USC § 1692e(2)(A), prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt, including, but not limited to misrepresenting the character, amount or legal status of a debt.

As can clearly be seen from the ever changing character and amounts sent forth in its various letters, AZDF indisputably made misleading representations.

Moreover, § 108(3)(iii) of the Michigan Condominium Act, MCL § 559.208(3)(iii), provides that the Notice of Lien shall set forth the amounts due, "exclusive of interest, costs, attorney fees, and future assessments." AZDF clearly misrepresented this amount in the lien it sent to Mr. Haddad; which, in fact, was recorded in violation of this statute. Accordingly, AZDF not only threatened to take action that it could not legally take, but actually proceeded to take such action.

The explicit Congressional declaration of purpose in passing the FDCPA is set forth in 15 USC § 1692(e).

> "(e) Purposes
>
> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

Such purpose would not be served by allowing AZDF to escape liability through the mere fortuity that at some point Mr. Haddad rented out this unit.

Likewise, the purported debt was a "debt" as defined by the RCPA. Under the RCPA, one need not be a debt collector, but a "regulated person". Pursuant to MCL § 445.251(g)(xi), a "regulated person" includes an "attorney handling claims

and collections on behalf of a client and in the attorney's own name." AZDF is, therefore, a regulated person, and has not denied same.

In *McKeown v Mary Jane M. Elliott PC*, US District Court, ED Mich, Case No. 07-12016-BC; 2007 WL 4326825 (December 10, 2007), the Plaintiff brought and action against an attorney under Michigan's Occupational Code, MCL § 339.901, *et seq.*, as well as the RCPA. The Court noted that under the Occupational Code ("§ 339") a "[c]ollection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as ... [a]n attorney handling claims and collections on behalf of clients and in the attorney's own name." MCL § 339.901(b)(xi). Whereas, by contrast, a regulated person under the RCPA ("§ 445") is "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including ... [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name." MCL § 445.251(g)(xi). The Court concluded:

> "Defendant's collection activities were on behalf of a client and Defendant does not fit within the meaning of a collection agency outlined in § 339. On the other hand, Defendant fits squarely within the definition set forth under § 445."

Under the RCPA, a regulated person shall not, *inter alia*, make "an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt" or "misrepresent the legal rights of the creditor", or fail "to

implement a procedure designed to prevent a violation by an employee." MCL §
445.252(f).

Again, the ever changing representations of AZDF, in addition to sending a
copy of a lien which is invalid, in an effort to get that individual to pay a sum
which he does not owe, must be deemed deceptive, and cannot be permissible
under the RCPA. Moreover, based on the haphazard way in which AZDF asserted
various amounts owing, it is clear that if it had a procedure to prevent a violation
by an employee, it certainly had failed to implement it.

The RCPA was obviously passed to benefit consumers and to curtail abusive
collection practices. As such it is remedial in nature. "[I]f a statute or amendment
is 'designed to correct an existing law, redress an existing grievance, or introduce
regulations conducive to the public good', it will be regarded as remedial in
nature." *Rookledge v Garwood*, 340 Mich 444, 453; 65 NW2d 785 (1954). One of
the canons of statutory construction is that "remedial statutes … are liberally
construed in favor of the persons intended to be benefited." *Brown v Mayor of
Detroit,* 271 Mich App 692, 706; 723 NW2d 464 (2006).

It was clear error not to grant summary judgment in favor of Plaintiff.

**The trial judge erred in denying the Motion to Alter Judgment.**

"Generally, the denial of a motion to reconsider is reviewed for an abuse of
discretion. However, when a Rule 59(e) motion seeks reconsideration of a grant

23

of summary judgment, this Court conducts a *de novo* review using the same legal standard employed by the district court. *Gage Products Co v Henkel Corp*, 393 F.3d 629, 637 (6th Cir, 2004) (citations omitted.)    Motions to alter or amend judgment may be granted if there is newly discovered evidence or a clear error of law. *Sault Ste Marie Tribe of Chippewa Indians v Engler*, 146 F3d 367, 374 (6th Cir, 1998).   The newly discovered evidence must be "material and controlling and clearly would have produced a different result if presented before the original judgment." *Good v Ohio Edison Co*, 149 F3d 413, 423 (6th Cir, 1998) (citations omitted).  Here, the newly discovered evidence is of such a character.

Mr. Haddad's newly discovered evidence established, without question, that a trier of fact could have found the debt was an "association fee" incurred when the condominium was Mr. Haddad's personal residence. Such evidence had to have produced a different result than the Court granting of summary judgment in favor of Defendant.

Evidence is "newly discovered", if a party was "excusably ignorant of the facts". *Colunga v Young,* 722 F.Supp 1479, 1487 (WD Mich, 1989), *aff'd,* 914 F2d 255 (6th Cir, 1990).  Here, Mr. Haddad was.  He had no reason to believe that he still had a bill from 7 years ago, believing any such records to have been thrown out years ago. He was excusably ignorant of the fact that such a paper still existed. He fortuitously, while house cleaning, discovered that he was wrong.

The situation is closely analogous to *Serio v Badger Mut Ins Co*, 266 F2d 418 (5th Cir, 1959), wherein the Court, at 421, stated:

> "The sole basis for the denial of the motion was a failure of the insured to find and produce the records at an earlier time. No prejudice to the insurance companies is shown to have resulted from the delay in the discovery of the evidence. ... The rule is to be liberally construed in order that judgments may reflect the true merits of a case. ... The district court held that a prudent person would have searched for the records at the place where they were subsequently found by accident. We do not agree. Serio asserts that he believed and we think he was entitled to believe that the records had been burned. So believing a prudent person would not have been expected to conduct a search.
>
> The ends of justice require that a new trial be granted."

## CONCLUSION

The trial court's interpretation of "consumer debt" was clearly erroneous, and even if not, it was clearly erroneous to conclude there was no genuine issue of fact on that issue.  On the other hand, there are no genuine issues of material fact with respect to Defendant's violations of the FDCPA and the RCPA. Plaintiff-Appellant respectfully requests that this Honorable Court reverse the judgment of the District Court and remand with instructions to grant summary judgment in favor of Mr. Haddad.  In the alternative, Plaintiff-Appellant respectfully requests that this Honorable Court reverse the judgment of the District Court and remand the matter for trial.

Respectfully submitted,

Meisner & Associates, P.C.

DATED:  September 23, 2011

By:  /s/Daniel P. Feinberg
Daniel P. Feinberg (P38356)
30200 Telegraph Road, Suite 467
Bingham Farms, MI  48025
(248) 644-4433
dfeinberg@meisner-associates.com
Attorney for Plaintiff-Appellant

26

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,157 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of by Fed. R. App. P. 32(a)(5) and the type style requirement of by Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionately spaced typeface using Microsoft word in 14-point Times New Roman style.

/s/Daniel P. Feinberg
Daniel P. Feinberg (P38356)
30200 Telegraph Road, Suite 467
Bingham Farms, MI  48025
(248) 644-4433
dfeinberg@meisner-associates.com
Attorney for Plaintiff-Appellant

# ADDENDUM

## Designation of Relevant District Court Documents

Record Entry No. 1, Complaint and Demand for Trial by Jury

Record Entry No. 10, Defendant's Motion for Summary Judgment

Record Entry No. 11, Plaintiff's Motion for Summary Judgment

Record Entry No. 13, Defendant's Response to Motion for Summary Judgment

Record Entry No. 14, Plaintiff's Response Motion for Summary Judgment

Record Entry No. 15, Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment

Record Entry No. 16, Notice of Hearing

Record Entry No. 17, Plaintiff's Reply to Defendant's Response Motion for Summary Judgment

Record Entry No. 18, Order

Record Entry No. 19, Judgment

Record Entry No. 20, Plaintiff's Motion to Alter Judgment

Record Entry No. 21, Notice of Hearing

Record Entry No. 22, Order

Record Entry No. 23, Notice of Appeal